```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
    ROBERT BEACH and JEANETTE      )
 4  SIMMONS,                       )
                                   )
 5            Plaintiffs,          )
    -vs-                           )
 6                                 )   Case No. 09 C 6688
    TONY DeBOIS, Star No. 331; THE )
 7  CITY OF MARKHAM; OFFICER       )   Chicago, Illinois
    NEWMAN, Star No. 541; OFFICER  )   April 21, 2010
 8  BRAZIL, Star No. 536; and      )   9:56 a.m.
    OFFICER TOLBERT, Markham       )
 9  Police Officers,               )
                                   )
10            Defendants.          )

11
                    TRANSCRIPT OF PROCEEDINGS
12             BEFORE THE HONORABLE RUBEN CASTILLO

13  APPEARANCES:

14  For the Plaintiffs:    MR. BENJAMIN H. ELSON
                           MS. JOEY L. MOGUL
15                         People's Law Office
                           1180 N. Milwaukee Avenue
16                         Chicago, IL  60642
                           (773) 235-0070
17
    For the Defendants:    MS. MOYENDA MUTHARIKA KNAPP
18                         Johnson & Bell, Ltd.
                           33 West Monroe Street
19                         Suite 2700
                           Chicago, IL  60603
20                         (312) 372-0770

21  Court Reporter:

22         KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                     Official Court Reporter
23                 United States District Court
            219 South Dearborn Street, Suite 2144-A
24                    Chicago, Illinois  60604
                  Telephone:  (312) 435-5569
25                    www.Kathyfennell.com
```

1    (Proceedings heard in open court:)
2            THE CLERK:  09 C 6688, Beach versus City of Markham.
3            THE COURT:  Good morning.
4            MR. ELSON:  Good morning.  Ben Elson and Joey Mogul
5    for the plaintiffs.
6            MS. MOGUL:  Good morning, your Honor.
7            MS. KNAPP:  Good morning, your Honor.  Moyenda Knapp
8    on behalf of defendant, City of Markham, Tony DeBois, Officer
9    Newman and Officer Brazil.
10           THE COURT:  Okay.
11       This case seems to have fallen off of the cooperation
12   mode and into a pretty antagonistic litigation mode.  I hope to
13   straighten it out today.
14       So what motion do you want to proceed with first?
15           MS. KNAPP:  Well, your Honor, we have a motion -- I
16   think noticed is our motion to compel plaintiffs' answers to
17   certain discovery, and we -- and our motion for a protective
18   order.
19           THE COURT:  Okay.
20           MS. KNAPP:  Plaintiffs have a motion to compel as
21   well.  They have filed what's --
22           THE COURT:  Which one was filed first, just out of --
23           MR. ELSON:  Ours was filed first, Judge.
24           MS. KNAPP:  Theirs was filed first.
25           MS. MOGUL:  And if we could, we'd like to proceed with

1  ours.
2     THE COURT: I think we should.
3     MR. ELSON: Okay. It's a motion to compel discovery,
4  Judge.
5     The discovery we're seeking is simple, and it's
6  routinely produced in these cases without objection. We're
7  asking for the Markham Police Department policies concerning
8  the police misconduct in question, Defendant DeBois's personnel
9  file and disciplinary history, Defendant DeBois's criminal
10 history and Defendant DeBois's fitness-for-duty evaluation if
11 there is one.
12    So we filed this motion, Judge, asking your Honor to
13 order the defendants to produce these materials within seven
14 days so we can move forward with Defendant DeBois's deposition.
15    THE COURT: Okay.
16    And in response to this motion, is that where the
17 defendants have filed a request for a protective order?
18    MS. KNAPP: Yes, your Honor.
19    We had served our objections, and that was
20 communicated to Ms. Mogul. We also have made efforts to have a
21 protective order entered in this case. When it appeared that
22 we could not reach an agreement, we then filed a motion for
23 entry of a protective order.
24    So that's kind of the posture in which we're in right
25 now. We'd like the protective order entered prior to our

1  production, and it appears that to a degree, plaintiffs are
2  conceding that a protective order is necessary in this case.
3  It just appears there's been some type of a breakdown as to
4  what would be encompassed by that protective order.
5      THE COURT:  There's a dispute as to the current state
6  of state law that governs the confidentiality, is that correct?
7      MS. KNAPP:  Yes.
8      MR. ELSON:  That's right, Judge.
9      THE COURT:  Other than that, you agree to some type of
10 protective order.
11     MR. ELSON:  Personal identifying information, yes.
12     MS. KNAPP:  And financial --
13     MR. ELSON:  And medical records.
14     MS. KNAPP:  And financial, and there's other things as
15 well.  Actually, in this response, and they filed a cross
16 motion which is not really noticed before the Court, but in
17 their response, they seem to agree that financial and other
18 information is protected -- should be protected, excuse me, by
19 a protective order.
20     THE COURT:  Okay.
21     MS. KNAPP:  Just a breakdown as to the terms.  We
22 haven't had an opportunity to respond to their cross-motion
23 response document --
24     THE COURT:  Okay.
25     MS. KNAPP:  -- which raises a lot of case law, but

1 that's kind of where we are right now.
2 MR. ELSON: Judge, the protective order is a separate
3 order from the discovery. Most of these items --
4 THE COURT: Well, it is, and it isn't.
5 MR. ELSON: Except for the disciplinary history, yes,
6 but the protective order issue was raised subsequently. I told
7 Ms. Knapp that we would hold these documents attorneys' eyes
8 only until the protective order was entered.
9 THE COURT: I understand that.
10 MR. ELSON: Okay.
11 THE COURT: First of all, let me start out with
12 plaintiffs' motion to compel. Given the issues in this case,
13 the plaintiffs' motion to compel is granted.
14 Second of all, as to the scope of the protective
15 order, the Court agrees that the plaintiffs' reading of the
16 case law that has emanated from the Illinois appellate courts
17 is correct, so personal financial matters will be protected by
18 this Court. Beyond that, I will not enter the overbroad
19 protective order sought by the defendants.
20 So the defendants' motion for the entry of a
21 confidential matter protective order, that's going to be
22 denied.
23 MS. KNAPP: Does this also include proprietary
24 information? We've got a city defendant.
25 THE COURT: What proprietary information are you

1  talking about?
2         MS. KNAPP:  Well, your Honor, as to any type of --
3  well, we've got here, there's agreement, Social Security,
4  driver's license, residential, contact, financial, family
5  members, insurance beneficiaries, wage information, other
6  provider matters.  They have asked for any type of policy-type
7  documents.  To the extent that that may be something that we
8  would want to mark confidential, would that be encompassed by
9  your Honor's ruling today?
10        THE COURT:  Not necessarily.  Personal financial
11 information.  You want to speak to this issue --
12        MR. ELSON:  Yes.
13        THE COURT:  -- how far you're willing to go?
14        MR. ELSON:  Well, I don't believe the Markham Police
15 Department policies should be marked confidential.  They can't
16 show good cause for that.
17        THE COURT:  Yeah, I don't see how they could do that
18 either.  So if that's what you mean by proprietary, I don't
19 include that.
20        MS. KNAPP:  Okay.  Well, your Honor, when was -- when
21 are we -- the timeframe?
22        THE COURT:  I'll give you 14 days to produce this
23 information.
24        MS. KNAPP:  Could we ask for the protective order to
25 be entered at some point prior to that time?

1     THE COURT: Should be entered before the production.
2 I don't think that's complicated.
3     MR. ELSON: Will you be entering our proposed
4 protective order, Judge?
5     THE COURT: Have you submitted it?
6     MR. ELSON: We did. Yesterday I sent you a courtesy
7 copy, and I e-mailed it to the proposed order e-mail.
8     THE COURT: That is a qualified HIPAA and confidential
9 matter protective order?
10     MR. ELSON: Correct.
11     THE COURT: I will enter that.
12     MS. KNAPP: Your Honor, we had had other objections
13 with respect to that. I think there were matters raised.
14     One of the paragraphs, if I recall correctly and which
15 they defined, seemed to apply more to medical providers in the
16 initial clause of their protective order, and as well we --
17 their protective order only includes that it be marked
18 confidential.
19     There was a prior production by another municipality
20 that did not redact certain Social Security numbers of one of
21 the officers and other information. We had included in ours a
22 request for an attorneys' eyes only because of that prior
23 information, that that information be marked attorneys' eyes
24 only, since it's already --
25     THE COURT: Okay.

1     You both e-mailed your proposed protective orders to
2 me yesterday afternoon.
3     MS. KNAPP:  Correct, your Honor.
4     THE COURT:  Right?
5     MR. ELSON:  Correct.
6     THE COURT:  I compared them apple to apple, and I will
7 enter the plaintiffs' protective order.
8     MR. ELSON:  Thank you, Judge.
9     THE COURT:  That's what I will say.
10    MS. KNAPP:  Well, next up is our motion to compel
11 certain discovery.
12    THE COURT:  Okay.
13    MS. KNAPP:  The plaintiffs in this case have raised
14 the issue that the extent of their damages are that they suffer
15 and continue to suffer emotional pain, injury, mental distress,
16 nightmares, fear and retaliation, they have failed to answer
17 any -- the discovery that asks for whether in the past five
18 years they have any other psychiatric or psychological type or
19 other mental-health-type treatment.
20    They answered that with respect to medical only.  This
21 was discussed with the plaintiff.  This is the Interrogatory
22 No. 7.  And, again, that answer, and this was discussed during
23 our Rule 37 conference, that answer is still not provided.
24    In addition, Interrogatory 8 asked them whether they
25 had suffered personal injury or prolonged injury since the date

1 of the occurrence.

2 For both of those interrogatories, they'd objected as
3 harassing and not reasonably calculated to lead to discovery of
4 admissible evidence.

5 We're entitled to pursue with them since they've put
6 their mental health at issue and Plaintiff Simmons has put at
7 issue with a stiff neck, which are the only injuries that
8 they're claiming at issue. We'd like to pursue discovery on
9 that.

10 At one point, there was a concession by plaintiffs'
11 counsel Ben Elson with respect to a request, I'm moving on to
12 the request as well, that they would provide some type of
13 authorization for these records.

14 Then Ms. Mogul recently faxed a letter indicating that
15 despite this concession, they would not be doing so.

16 Plaintiffs have not objected on the basis of any type
17 of privilege or confidentiality, so those objections are
18 waived.

19 In addition, there is an Interrogatory 11 we tried to
20 discuss with plaintiff, Mr. Elson, during the Rule 37
21 conference. He objected based on the fact that it had not been
22 set forth in a Rule 37 letter. We'd indicated that Rule 37
23 requires personal consultation. We were attempting to do so.
24 So we'd ask that that interrogatory be provided.

25 Also there is a Request No. 15 that has asked for

1  photographs of the plaintiff. He's claiming this stiff neck.
2  We don't know if there's any type of, you know -- there's
3  photographs out there that show him frolicking along, that
4  would possibly be relevant to his damage claim, so --
5      THE COURT: What type of photographs?
6      MS. KNAPP: Photographs of the plaintiffs themselves,
7  I believe. There's been photographs produced by the parties
8  with respect to, you know, a door that's not really at issue,
9  but photographs that plaintiff, he's claimed this stiff neck,
10 that would show his physical condition.
11     So those are the discovery --
12     THE COURT: How would a photograph show some relation
13 to a stiff neck?
14     MS. KNAPP: Well, if he was -- if he was out enjoying
15 himself, you know, sailing, doing whatever --
16     THE COURT: So you're asking the plaintiffs to
17 disclose photographs?
18     MS. KNAPP: Correct, showing their physical condition,
19 answer interrogatories as to whether they had psychiatric and
20 psychological or medical treatment, which they're claiming,
21 before or after this occurrence, and provide information in
22 Interrogatory No. 11.
23     Interestingly, Interrogatory No. 11 is like two other
24 interrogatories that they responded to.
25     THE COURT: Have you read -- let me just interrupt

1  you, counsel.  Have you read the plaintiffs' response to your
2  motion to compel?
3             MS. KNAPP:  Yes, I have.
4             THE COURT:  Okay.
5        First of all, they say very concretely, and these can
6  be used by you in this litigation as judicial admissions,
7  "Plaintiff Simmons does not claim any physical injuries from
8  this incident."  That's an absolute statement.  That's
9  Paragraph 2.
10            Then it says, "Plaintiff Beach claims to have suffered
11 a stiff neck for three weeks."
12            Paragraph 3 says, "Neither plaintiff has received any
13 medical treatment for these injuries."  Another absolute
14 statement.  No equivocation.
15            Paragraph 4, "Plaintiffs' injuries are primarily
16 mental and emotional in nature," and then they detail more
17 about that.
18            But then Paragraph 5 absolutely says, "Neither of the
19 plaintiffs has received any psychiatric nor psychological
20 treatment for their mental or emotional injuries from this
21 incident or for any other instance or issue in their lives."
22            I don't see how much more clear that could be.
23            MS. KNAPP:  That was not provided, that they have not
24 received any other psychiatric or psychological treatment in
25 their answers to interrogatories.  What they've indicated is

1  they've gone out of their way to answer just with respect --
2  and I don't want to go into --
3      THE COURT: Right.
4      MS. KNAPP: -- one of the medical issues with respect
5  to the -- one of the plaintiffs could possibly lead to their --
6  Plaintiff Simmons discovery with respect to her claims of
7  having some type of psychiatric or anxiety-type claims. I'm
8  looking specifically at their response to -- Plaintiff Simmons'
9  Response No. 7.
10     If you look at that response, neither plaintiff has
11 indicated anything with respect to any psychiatric or
12 psychological treatment.
13     I agree, you know, obviously, your Honor --
14     THE COURT: They're saying there was none.
15     MS. KNAPP: They didn't say that in their
16 interrogatories. They just said that in that response. They
17 just said they were treated by medical professionals. They
18 avoided stating whether it was psychiatric or psychological
19 treatment they'd ever received, which they said in
20 Interrogatory 3.
21     MS. MOGUL: Your Honor, may I respond on behalf of the
22 plaintiff?
23     THE COURT: Go ahead, Ms. Mogul.
24     MS. MOGUL: Your Honor, we, in answering these
25 interrogatories, believed we were clear in stating that they

1  had no medical or psychiatric treatment.  Defense counsel
2  disagreed, asked us to provide a supplemental interrogatory.
3  In that supplemental interrogatory, we specifically stated they
4  have not received any medical or psychiatric treatment.  It's
5  in Supplemental Interrogatory No. 3.
6  They asked us for all medical treatment they received
7  in the past five years.  While we don't believe that's
8  relevant, we, in fact, supplemented our interrogatory answer
9  and provided the five years of treatment they've had for things
10 like pneumonia, for a sinus infection.
11 THE COURT:  Just regular medical treatment.
12 MS. MOGUL:  Regular medical treatment.
13 Your Honor, we thought we were as clear as possible.
14 We are not hiding.  It's very clear.  They've received no
15 treatment for this incident whatsoever.  They've never received
16 any mental treatment in the past.  We don't believe at this
17 point, therefore, that the last ten years of their medical
18 records are in any way relevant to this case.
19 THE COURT:  Well, all I can say --
20 MS. KNAPP:  If I may respond?
21 THE COURT:  -- is I agree with that.
22 MS. KNAPP:  Well, your Honor -- I'm sorry.
23 THE COURT:  That is what I will say.
24 I've carefully looked at these answers, and I don't
25 see any equivocation, especially when I add to that the

1  response by plaintiffs' attorneys in such absolute terms.  I
2  don't see any hedging when Paragraph 5 says, "Neither of the
3  plaintiffs have received any psychiatric nor psychological
4  treatment for their mental or emotional injuries for this
5  incident or for other incidents or issue in their lives."
6  That's a point-blank statement.
7      But let me just say, counsel for defendant, you know,
8  suspiciously, it looks like the reaction to plaintiffs' motion
9  to compel was the defendants filing a motion to compel, which
10 is borderline frivolous.  I don't want to say anything beyond
11 that.  I've said what I've said, but I'm denying the
12 defendants' motion to compel.  I see nothing inappropriate
13 about the plaintiffs' answers to discovery that's been
14 propounded.
15      So let's leave it at that.  I think you've taken
16 enough time on my motion call.
17      Thank you.
18      MR. ELSON:  Thank you, Judge.
19      MS. MOGUL:  Your Honor, may I raise one issue just so
20 you don't have to see us next week?
21      THE COURT:  Okay.
22      MS. MOGUL:  The defendants filed a motion for
23 extension to time to answer or otherwise plead --
24      THE COURT:  Okay.
25      MS. MOGUL:  -- on behalf of the two of the three new

Case: 1:09-cv-06688 Document #: 65 Filed: 05/21/10 Page 15 of 16 PageID #:425

15

1 defendants.
2     THE COURT: Okay.
3     MS. MOGUL: We agree to that, your Honor.
4     THE COURT: Okay. We'll certainly grant that.
5     MS. KNAPP: Yes. I contacted them just before I filed
6 it, but I didn't receive --
7     THE COURT: Right.
8     MS. KNAPP: -- a call back, as I indicated in our
9 motion.
10     THE COURT: I would appreciate a little bit more
11 cooperation in this case. That's all I will say. A little bit
12 more cooperation, civility.
13     I understand you disagree as to the underlying issues,
14 but I think you can be agreeable even while disagreeing.
15 That's just my take.
16     Thank you.
17     MS. KNAPP: Thank you, your Honor.
18     And another point, not to belabor it, we did write to
19 them for some time prior to this.
20     THE COURT: Okay. There also -- before you run off,
21 plaintiff has already responded to Defendant City of Markham's
22 motion to dismiss Counts 3 and 5.
23     Do you wish to file anything further?
24     MS. KNAPP: I think we have a reply date.
25     THE COURT: Okay.

1  MS. KNAPP: Either next week --
2  THE COURT: Okay. That's fine.
3  I'll wait for the reply, and then I'll rule.
4  MS. KNAPP: Okay.
5  THE COURT: Thank you.
6  (Which were all the proceedings heard.)
7                    C E R T I F I C A T E
8  I certify that the foregoing is a correct
9  transcript from the record of proceedings in the above-entitled
10 matter.
11 */s/ Kathleen M. Fennell*

May 6, 2010

12 _____         _____
    Official Court Reporter                      Date
13  United States District Court
    Northern District of Illinois
14        Eastern Division
15
16
17
18
19
20
21
22
23
24
25